# Richmond

CHARLES W. KEYSER V. THE FEDERAL LAND BANK OF
BALTIMORE, ET AL.

November 11, 1937.

Present, All the Justices.

The opinion states the case.

*Weaver & Armstrong,* for the appellant.

*W. Leroy Corron, Elliott Marshall, Peyton G. Jefferson* and *M. W. Booth,* for the appellees.

GREGORY, J., delivered the opinion of the court.

The Federal Land Bank of Baltimore instituted a suit to foreclose a mortgage upon "Applewood," a farm and orchard formerly owned by the late John W. Wood. A decree was entered in the suit in which special commissioners were appointed and directed to make sale of the property. One of them qualified, gave the required bond and in accordance with the directions in the decree offered the property at public auction. Charles W. Keyser was the highest bidder, and the property was cried off to him at his bid of $10,600. He thereupon promptly complied with the terms of sale.

The special commissioner filed a report of sale. He reported to the court that he properly advertised the sale of the property in the county newspaper; that he also advertised the sale by hand bills posted in Front Royal, the county seat; and that he sent hand bills to the clerks of the Circuit Courts of Rappahannock, Loudoun, Fauquier, Frederick and Shenandoah counties, and requested them to post them at the front doors of their respective court houses. He also reported that he mailed copies of the advertisements to other persons who he thought might be interested.

The special commissioner offered the property at the time and place specified, and according to his report "after much spirited bidding for a period of at least forty-five minutes,

the same was cried off to C. W. Keyser at the sum of Ten Thousand Six Hundred Dollars ($10,600.00) he being the last and highest bidder and that being the last and highest bid."

The special commissioner was of opinion that the sum bid for the said property was reasonable and fair and represented its true market value, and he recommended that the sale be confirmed.

Before the report of sale was acted upon by the court, one H. E. Martin filed a petition in the cause alleging that the bid made for the property by the appellant was a grossly inadequate one, and that if the court would again offer the property he would bid $1,100 in excess of the $10,600 offered by the appellant. He tendered his certified check for $1,100 as evidence of his good faith. He also tendered affidavits of four persons in which the affiants state that in their opinion the amount bid by the appellant was grossly inadequate.

Mr. Martin admitted in his petition that he knew that the property was to be sold; that he knew of the time and place of sale but that he did not attend because he "forgot" about it.

The cause came on to be heard upon the report of sale and the motion of the appellant to confirm the sale to him at his bid of $10,600 and upon affidavits sustaining the motion; upon the petition and upset bid of H. E. Martin and upon affidavits filed with his petition. While the cause was being heard, Mr. Martin submitted to the court another bid in writing for the property of $14,000, and tendered his certified check for $7,000 as part payment in the event his bid was accepted. He reserved the right to withdraw the bid and check unless his offer was accepted within sixty days from September 7, 1936, the date the offer was made.

After mature consideration and after personally inspecting the property, the court, over the protest of the appellant, accepted the upset bids of H. E. Martin by this provision of the decree appealed from: "It is further ordered that the said Special Commissioners, or the one acting, shall

hold the bid of $14,000.00, tendered by H. E. Martin and upon offering the property for sale as herein provided, the said bid shall be placed, and the bidding shall thus be started at that price, in the event that sale be made within sixty days from the date of the said offer, and, in the event that sale be not made within the said period of sixty days, the original bid or offer of the said H. E. Martin in the sum of Eleven Thousand Seven Hundred Dollars ($11,700.00) shall obtain, and any further sale shall be commenced with a bid in that amount by him."

The one question presented for decision is whether or not the bid of the appellant of $10,600 was grossly inadequate and required its rejection by the trial court.

From the quoted portion of the decree and the terms of the last upset bid made by Mr. Martin it is uncertain which of his upset bids is binding. The last bid was submitted on condition that it be accepted within sixty days, and the decree provided that in the event that sale be made within sixty days from the date of said offer the bidding would start with $14,000, but if the sale be not made within the sixty days the bidding would start with $11,700. It would appear that there might be serious difficulty in holding Mr. Martin to the bid of $14,000 if he desired to withdraw it, because the sixty days have expired and the resale has not been held. If he would withdraw the $14,000 bid and a re-sale were had the bidding would start with his first upset bid of $11,700, which would represent an increase in price offered over the amount bid by appellant of a little more than ten per cent, while the second upset bid of $14,000, if sustained and not withdrawn would be an increase over the appellant's bid of about thirty-two per cent.

In speaking of upset bids, Mr. Lile, in his work on Equity Pleading and Practice, page 126, has this to say:

"Where land has been cried out at a judicial sale, the legal situation, as already pointed out, is peculiar—the purchaser being bound by his bid, but the court, under whose decree the sale is had, is not bound to accept the bid, but, on the contrary, may refuse to confirm the sale, and may

order a re-sale, if, in its opinion, the property did not bring its fair value.

■■ "The policy of the court, however, is to encourage prospective bidders to attend its sales and thus insure a good price for the property that it administers. This policy is best subserved when bidders are encouraged to feel that if the property is knocked out to them the court will confirm the sale. The practice of allowing other parties to come in after the sale is over, with offers of a larger sum for the same property (known as 'opening the biddings'), is not only unfair to the successful bidder, but tends to discourage bidding at such sales. Hence courts are averse to receiving upset bids, where the new bidder attended, or had an opportunity to attend, the public sale."

In the case at bar, as already pointed out, Mr. Martin, the upset bidder, knew of the time and place of sale and had no valid excuse for not being present.

■■ There are numerous Virginia cases in which upset bids have been discussed. The latest leading case on the subject is *Dunn* v. *Silk,* 155 Va. 504, 155 S. E. 694, 71 A. L. R. 667. There it was held that where the sale is conducted fairly, an upset bid should not be received on the sole ground of inadequacy of price, unless it is affirmatively shown by the evidence that the price at which the land in question was purchased was grossly inadequate. The burden of showing such gross inadequacy is upon those who allege it.

In that case Mr. Justice Holt discusses all of the leading Virginia cases. It is needless to restate what was said there. In addition to that case two late cases are *O. K. Warehouse* v. *West,* 151 Va. 809, 145 S. E. 253; and *First National Bank* v. *Wright,* 153 Va. 429, 150 S. E. 255.

■■ In R. C. L. vol. 16, section 70, page 95, the rule is clearly stated thus: "A judicial sale regularly made in the manner prescribed by law, upon due notice, and without fraud, unfairness, surprise or mistake, will not generally be set aside or refused confirmation on account of mere inadequacy of price, however great, unless the inadequacy is

so gross as to shock the conscience and raise a presumption of fraud, unfairness, or mistake. * * * And a sale conducted with fairness and regularity should not be set aside for gross inadequacy of price upon conflicting evidence as to whether it sold at or above the fair market value, even though an advance bid is subsequently made of one-fourth over the price at which the property was knocked down."

There has been no suggestion in the case at bar that any fraud, mistake or unfair dealing has taken place with reference to the sale. The sole objection to confirmation is that the bid of the appellant is so grossly inadequate that it shocks the conscience of the court. Where the sale is tainted with fraud, mistake or misconduct and has worked an injustice to the party complaining, the controlling rule in determining whether the sale should be set aside is different from the rule to be applied where none of those elements exists and the sole reliance for objection to confirmation is inadequacy of price, as is the case here.

In *Benet* v. *Ford,* 113 Va. 442, 74 S. E. 394, 397, where the only objection to the confirmation of the sale was inadequacy of price, there appears this quotation which clearly states the rule in Virginia:

" 'The highest bid at an open judicial sale, fairly conducted, after full notice, in the face of such competition as can be attracted, is a fair and just criterion of the value of the property at that time. After-stated opinions, affidavits of under-value, and the like, are regarded with little favor, and are entitled to little weight in comparison with the fact established by the auction and its results.' *Nitro-Phos. Syn.* v. *Johnson,* 100 Va. 774, 42 S. E. 995, citing *Todd* v. *Gallego Mills,* 84 Va. 586, 5 S. E. 676. See also, Hogg's Eq. Pro., sections 403, 683; *Hazlewood* v. *Forrer,* 94 Va. 703, 27 S. E. 507; *Bradford* v. *McConihay,* 15 W. Va. 732."

In the present case the sale was well advertised and well attended, the bidding spirited, and the upset bidder knew of the time and place of sale and had an opportunity to be present. The sale was conducted fairly and was free from any semblance of fraud, mistake or misconduct. Un-

der these facts we think the trial court should have confirmed the sale to the appellant.

We reverse the decree of the lower court and remand the cause with the direction that the sale be confirmed to the appellant.

*Reversed and remanded.*