# Richmond

C. J. PRETTYMAN V. JOHN W. CHANDLER'S ADM'RS, ET ALS.

November 20, 1939.

Record No. 2106.

Present, All the Justices.

*Mears & Mears,* for the appellant.

No appearance for the appellees.

HOLT, J., delivered the opinion of the court.

A trial court has declined to confirm a judicial sale; hence this appeal.

John W. Chandler of Northampton county died in February, 1935, insolvent and intestate but possessed of considerable estate, including several tracts of land in that

county. J. Brooks Mapp and Margaret Bell Chandler, widow of this decedent, qualified as his personal representatives. Appraisers were appointed who were asked to value his real estate also. This appraisement and valuation was made and returned on June 20, 1935. Afterwards a creditors' suit was brought, and in a decree of reference there entered, a master commissioner was directed to ascertain then the fee simple value. This he did, and from a report filed in January, 1937, it appears that valuations theretofore put upon it were substantially adopted. Dunton J. Fartherly, G. Walter Mapp and J. Brooks Mapp were then named as special commissioners with directions to sell.

In accordance with the authority thus conferred, they sold these Chandler lands at public auction on July 2, 1938, and reported their transactions to the court but with no recommendations. The following table shows the lands then sold and the prices realized:

| Property | Appraised | Sale Price |
|---|---|---|
| Home of deceased | $ 6,000 | $ 3,050 |
| House and lot adjoining home of deceased | 1,500 | 2,375 |
| Vacant lot adjoining printing office | 500 | 500 |
| Godwin farm | 8,100 | 3,550 |
| Willis farm | 6,500 | 3,500 |
| Young farm | 9,900 | 4,000 |
| Fisher farm | 6,500 | 2,725 |
| Somers farm | 12,000 | 3,100 |
| Travis farm | 10,000 | 3,000 |
| | $61,000 | $25,800 |

The Godwin farm, which had been valued at $8,100, was sold to C. J. Prettyman for $3,550, subject, of course, to confirmation. This purchaser complied with the terms of sale and tendered to the commissioners the full amount of the purchase price. S. M. James filed an upset bid of $3,932.50. This, after a hearing but before any decision had been made, he increased to $4,082.50 and later to $4,-100. Confirmation was refused and a resale ordered.

The average price realized from the sale of all of these lands was .4236 of their assessed value. The Prettyman bid for the Godwin farm was slightly in excess of this. It is true that these appraised values very much exceeded the bids received, but Northampton county is in a trucking district where values widely fluctuate. These sales were adequately advertised, largely attended and fairly conducted. Bidding was active and prospective purchasers were given every opportunity to make up their minds.

Among those present was the upset bidder, who did then actually bid for the Godwin farm.

James contends that the high bid, $3,550, was grossly inadequate, and, as we have seen, put in an upset bid of $3,932.50, an advance of slightly under 12%, or of $382.50, which he further contends converted a grossly inadequate price into an adequate one. In support of his claim, he has filed two affidavits. The reasonableness of Prettyman's offer is supported by fifteen affidavits.

Evidence of this character is not very valuable but has some weight. *Keyser* v. *Federal Land Bank,* 169 Va. 368, 193 S. E. 489. Upon an upset bidder rests the burden of proof.

Of course public policy requires that the best price possible should be obtained at judicial sales, and it was in support of that policy that the old English rule rested.

"A practice prevailed in England prior to the act of 30 and 31 Vict., chapter 48, of opening the biddings in a judicial sale upon the receipt of an advance bid before confirmation, usually required to be an advance of ten per cent." 11 A. L. R. 400.

That rule was long followed in Virginia. In *Ewald* v. *Crockett et als.,* 85 Va. 299, 300, 7 S. E. 386, 387, the court said:

"All the cases agree that the court must sell at the best price obtainable; and when a substantial upset bid, well secured and safe, for ten per cent advance, is put in before confirmation, it is as much a valid bid as if made at the

auction. This is the settled law of this court, and will doubtless so remain."

 Upon more mature consideration, this was deemed to be unwise. In the long run, it is of the utmost importance that the stability of judicial sales be established. Where a sale is adequately advertised, well attended and fairly made, the price obtained is the best test of value. *Keyser* v. *Federal Land Bank, supra.* Possible purchasers present should not be permitted to play fast and loose with them or to stand by, secure in the knowledge that they had another chance. And so in *Watkins & Bros.* v. *Jones*, 107 Va. 6, 57 S. E. 608, 609, Keith, P., said:

"Of course the object of a sale is to secure the best price for the property, and this result can be best accomplished, not by accepting every upset bid offered under circumstances such as are disclosed by this record, but by the establishment of and adherence to rules which will inspire confidence in the stability of judicial sales, as was said by Mr. Minor in 2 Min. Inst. (4th Ed.) 380, rather than by the introduction of a practice that will induce bidders to feel that judicial sales are not to be seriously taken."

 In *Litton* v. *Flanary*, 116 Va. 710, 82 S. E. 692, Judge Harrison said:

"This court has so often held that it was error to set aside a judicial sale solely because an advance bid of ten per cent had been made that it would be superfluous reiteration to discuss the rule and give the reasons therefor again."

 Mr. Justice Gregory makes this late and satisfactory statement of the present rule in Virginia:

"There are numerous Virginia cases in which upset bids have been discussed. The latest leading case on the subject is *Dunn* v. *Silk*, 155 Va. 504, 155 S. E. 694, 71 A. L. R. 667. There it was held that where the sale is conducted fairly, an upset bid should not be received on the sole ground of inadequacy of price, unless it is affirmatively shown by the evidence that the price at which the land in question was purchased was grossly inadequate. The bur-

den of showing such gross inadequacy is upon those who allege it." *Keyser* v. *Federal Land Bank, supra* [169 Va. 368, 193 S. E. 490]. To the same effect see *Ballentyne* v. *Smith*, 205 U. S. 285, 27 S. Ct. 527, 51 L. Ed. 803.

These governing principles are well illustrated by *First National Bank* v. *Wright*, 153 Va. 429, 150 S. E. 255. There land was sold at public auction for $7,500. Confirmation was recommended by the commissioners of sale. There was an upset bid of $8,625, later increased to $9,750. Bidding was reopened, and there was a final sale at $10,500. The trial court was reversed, Judge Campbell being of opinion that the original auction bid of $7,500 should have been confirmed.

It is true that this farm brought very much less than its appraised value but that was true of practically all of the other lands belonging to this decedent's estate and sold when it was sold. Certainly $3,550 was not grossly inadequate if the upset bid of $3,932.50 made by James was adequate.

It is true that the confirmation of these sales is within the sound judicial discretion of the trial court, but that discretion is not unlimited, and confirmation should be decreed unless it is made to appear that the price was grossly inadequate when adequacy of price is alone in issue.

The Prettyman bid of $3,550 should be accepted, and it is so ordered.*

*Reversed.*

---

*The same decree of the trial court, but involving slightly different facts, was considered by this court in *Chandler* v. *Chandler's Adm'rs, et als.*, ante, page 95, 5 S. E. (2d) 523, decided at this term of court.