# 𝔖taunton

JOSIE PERDUE, ET AL. V. J. A. DAVIS, ET ALS.

September 5, 1940.

Record No. 2230.

Present, All the Justices.

The opinion states the case.

*W. B. Snidow,* for the appellants.

*J. S. Andrews* and *J. L. Dillow,* for the appellees.

BROWNING, J., delivered the opinion of the court.

The appellants, who were the plaintiffs in the trial court, owned three tracts of land in Giles county, Virginia, containing 77.36 acres, and six lots in the village of Lurich,

Giles county, five of which adjoin and one is apart from the others. There are four houses on the said lands with some out-buildings. It does not appear what the condition of these buildings was at the time of the sale presently to be referred to. The tract of 50.36 acres is mountain land. The 22 acre tract is bottom land on New River, as is the five-acre tract.

The precise date does not appear, but sometime before 1938 a suit was instituted by the then creditors of the appellants to sell the lands referred to and subject the proceeds of the sale to the payment of their debts. The final prosecution of this suit was avoided by the negotiation of a loan by the appellants for the purpose of liquidating their debts. A deed of trust was placed upon the lands in question to secure this loan, which was to be paid off in monthly installments of $40.00 each, and accruing interest, the amount of the loan being $3,000.00. Default was made in the payment of the first installment and, in accordance with the terms of an acceleration clause, the entire debt became due and payable. In the absence of its payment, the trustee was directed to sell the property. It was thereupon advertised in accordance with the terms of said deed. The lands were offered for sale on November 17, 1938, at the front door of the courthouse of the said county. At the request of the appellant James Perdue, who asked for further time to secure another loan, the sale was postponed until December 15, 1938. The appellants had not been successful in their efforts to save the situation and the lands were again offered for sale and were purchased by J. A. Davis, one of the appellees. The purchase price, $3,250.00, was paid and a deed was executed and delivered to the purchaser.

The appellants instituted suit to set aside the deed and annul the sale, alleging that the advertisement was insufficient; that the price was inadequate and that the property was sold for cash rather than on time. These charges constituted the basis of the suit. The court denied the relief

sought and dismissed the bill. The case is before us on appeal.

Adverting to the first contention, the evidence shows that the trustee posted at three public places in the county and vicinity of the property hand bills descriptive thereof, giving the acreage, location and immediate derivation of the record titles and containing a statement of the deed of trust, its date and its place of recordation in the clerk's office. The sale was to take place at the front door of the court house of the county on November 17, 1938, at the hour of 10:00 a. m. The advertisement did not make mention of the buildings located on the lands, nor did it specify whether the property would be offered in parcels and then as a whole, or in what manner. It was to be a cash sale. We note that the deed of trust provided that the trustee, in the event of default, was required to advertise and sell the lands in accordance with the law governing sales under deeds of trust. The places at which the notices were posted were of public note and interest. The trustee mailed copies of the notice to the appellants and wrote to four real estate agents in nearby towns in West Virginia inviting them to the sale for the purpose of bidding.

When the sale was postponed on the 17th of November, 1938, typewritten notices thereof, stating the date of the postponed sale and the fact that it would be held in accordance with the original advertisement, were attached to each posted notice, and the trustee again advised the real estate agents referred to of the fact by letter.

A number of persons were present when the property was sold. It was offered first in parcels and then as a whole. There were four bidders and it was cried off to Davis, who was the highest bidder.

Under section 5167 of the Code, discretion is given to the trustee as to the incidents of the sale, unless they are fixed by the provisions of the deed of trust, which was not so in this case. The statute provides for such reasonable manner of publishment as the trustee may elect. Thus he has large discretion. Of course this discretion is

reviewable by the courts. We bear in mind that no objections were made or exceptions taken as to the advertisement and the doings of the trustee thereunder, upon the occasions of the original intended offer or actual offer of sale; indeed, not until the institution of the suit referred to did these defenses come to light, although a period of nearly two months elapsed from the time of the first advertisement to the date of sale and during this period there were evidently occasions of conference between the debtors and the trustee which afforded opportunities for protest, if any were in mind. This circumstance is not without weight. We are unable to say that the advertisement was not a substantial compliance with the requirements of the deed of trust and the law, or that it was such a material departure therefrom as to vitiate the sale. This finds decided justification in the attitude of the trustee and the creditor towards the debtors through the entire transaction. This will be emphasized later.

The alleged insufficiency of the advertisement and the inadequacy of the price of the land were two of the issues which were present in the case of *Hopkins* v. *Givens*, 119 Va. 578, 89 S. E. 871. It was said:

"The debts were confessedly due, and there was no pretense of fraud in connection with the transaction. In such circumstances, it has long been the settled rule in this court that mere inadequacy of price is not sufficient to avoid a deed, unless so gross as to shock the conscience of the chancellor and raise a presumption of fraud. That condition cannot be predicated on the evidence adduced in this case."

The value of land at different periods of time is such a variant element as to lack the dependability which ought to obtain in so serious a matter as the setting aside of a deed and the annulment of a sale under the existing circumstances.

It is true that eleven witnesses testified that in their opinions the lands were worth at least $6,000.00. Some of them testified that they were worth more. But there were

four bidders at the sale and three of them stopped short of the price at which they were sold. We get from the evidence two conditions which materially affect the value. One witness testified that the appellants had cut the timber from one of the tracts and another testified that the land needed some "medicine". An exhausted condition invariably depletes land values. Another thought is that if these lands were so valuable it should not have been difficult to readily obtain the money for another loan sufficient to pay off the impending indebtedness. At any rate we cannot say that the evidence in this case even suggests the presence of fraud, neither can we say that the price was so grossly inadequate that it should have shocked the conscience of the chancellor.

In the case of *Woodhouse* v. *Harrison,* 168 Va. 574, 582, 191 S. E. 776, 779, one of the most urgent issues was the alleged error of the trial court in decreeing that the property should be sold for cash. It was there said, Eggleston, J., delivering the opinion:

"This contention is without merit. Even before the incorporation in the statute of the present authority to sell 'upon such terms and conditions as the trustees may deem best', such power was usually written in deeds of trust in this state. And from time immemorial such language has been interpreted by the profession to include the power to sell either for cash or on time. Obviously it was the purpose of the legislature to have the language of the statute conform to the accepted practice, and thus to broaden and not to restrict the powers of the trustee."

We intimated that the attitude of the trustee and the creditor toward the debtors was placatory and amicable. It positively negatives the notion of fraud or collusion. The first sale was deferred in order to give the debtors additional time in which to secure a loan that would extricate them from their troubles. The purchaser offered to convey the lands to the debtor if he would pay the indebtedness with accrued interest and the expenses which he had been put to in resisting the suit. This, we think, puts to flight any thought of a desire upon the part of any of the interested

▮▮▮▮▮▮▮▮

▮▮▮

parties to take advantage of the unfortunate predicament of the appellants.

▮▮▮ We are impressed by the force and power of the briefs of appellants' attorney but the solemnity of a deed of trust, which was designed to obviate the necessity of a chancery suit with its inevitable incidents of expense, delay and complexity, and the laws governing the same should be held inviolate unless there be some compelling circumstance which would warrant their overthrow. We do not find the existence of such circumstance in this case. We think that the decree of the chancellor was right and we affirm it.

*Affirmed.*