# Richmond

## O. E. Cromer v. H. C. DeJarnette, Trustee, and Ethel M. Morris.

January 10, 1949.

Record No. 3401.

Present, Hudgins, C. J., and Gregory, Eggleston, Buchanan, Staples and Miller, JJ.

*J. L. Fray* and *Joseph H. Stratton, Jr.,* for the appellant.

*H. C. DeJarnette, S. Page Higginbotham* and *Vance M. Fry,* for the appellees.

EGGLESTON, J., delivered the opinion of the court.

On June 7, 1939, O. E. Cromer and wife conveyed to H. C. DeJarnette, trustee, a tract of five and one-half acres of land, with the buildings thereon, on which the Cromers resided, near Locust Grove in Orange county, to secure the payment of a debt of $100, evidenced by a bond of even date, payable one year after date with interest, and signed by the grantors. Shortly after the conveyance the Cromers removed to Baltimore. The bond was not paid at maturity, but after repeated demands the debtors made two payments of $25 each, the last being in January, 1943. Despite further and continued demands the balance was not paid.

On February 3, 1947, the trustee, at the request of the holder of the bond, and after having advertised the time, place and terms of sale in the manner hereinafter related, exposed the property for sale at public auction, for cash, in front of the Orange county courthouse. It was knocked down to Ethel M. Morris at the sum of $250 cash, that being the highest bid therefor.

On February 5, two days after the sale, Mrs. Cromer called on the trustee and protested the consummation of the transaction, on the ground that neither she nor her husband had notice of the sale, that they had accumulated sufficient money to discharge the debt, and desired to do so. Mrs. Cromer then called on Morris and offered him $200 for Mrs. Morris's bid on the property. This was refused. On February 7 the trustee closed the sale to the purchaser and delivered a deed to her.

In April, 1947, Cromer filed the present suit in equity against DeJarnette, trustee, and Ethel M. Morris, seeking to have the sale set aside on the grounds that, (1) the sale had been improperly and inadequately advertised, and

(2) the property had been sold by the trustee at a grossly inadequate price.

After proper answers had been filed by the two defendants the evidence was heard *ore tenus* by the trial court which entered a decree refusing to set aside the sale and dismissing the bill. From this decree the present appeal has been taken.

The deed of trust provided for the manner of advertisement and sale in this language: "Should default be made in the payment of the within secured debt at maturity, the trustee, on being required so to do by the holder of the said bond, shall proceed to sell the real estate hereby conveyed in pursuance with section 5167 of the Code of Virginia, * * *."

In *Gloucester Realty Corp.* v. *Guthrie,* 182 Va. 869, 30 S. E. (2d) 686, we held that under the terms of a similar provision the method of advertising the sale was to be measured and determined by the language of the statute which was in effect at the date of the execution and delivery of the deed, and not by that which was in effect at the time of the sale.

At the time of the execution and delivery of the deed of trust in the present suit, Code, sec. 5167, as amended by Acts 1926, ch. 324, p. 591, provided that in the event of the default in payment of the debt secured, the trustee, at the request of the creditor, "shall take possession of the property and proceed to sell the same at auction at the premises (or at such other place as the trustee may select) upon such terms and conditions as the trustee may deem best, after first advertising the time, place and terms of sale in such manner as the deed may provide, or, if none be provided, then *in such reasonable manner as the trustee may elect,* no notice to the grantor or his successor in title being required." (Emphasis added.)

Under such a provision the trustee has wide discretion as to the manner of advertisement. *Perdue* v. *Davis,* 176 Va. 102, 105, 10 S. E. (2d) 558, 559.

The trustee testified that he advertised the time, place

and terms of sale of the property by the posting and circulation of printed handbills at least thirty days prior to the date of sale; that he personally posted such a handbill on the bulletin board at the front door of the courthouse of Orange county, and mailed other handbills, with the request that they be posted, to at least fifteen post offices and general stores in Orange county. From three to five of these, he said, were mailed to the Locust Grove post office which was nearest the property.

The trustee, who has been engaged in the practice of law at Orange since 1935, with the exception of the four years during which he was in the armed service, further testified that he had "handled a great number of sales under deeds of trust" and had followed that manner of advertising, which was in accordance with "the present custom in Orange county for advertising sales under deeds of trust which * * * were executed at the time of the deed of trust in question."

It is true that James W. Green, a witness for the appellant, testified that it was the present custom that such sales be advertised in a newspaper circulated in the county. He was unable to say whether this method was followed in advertising sales under the statute as amended in 1926. But, in any event, such conflict as existed between the testimony of Green and DeJarnette was, of course, settled in favor of the latter by the decision of the trial court.

Several postmasters or merchants at various places throughout the county, testified that they received copies of these handbills and displayed them in their respective places of business. There is evidence that a number of persons saw the handbills at various places in the county and knew of the coming sale. Morris, the husband of the purchaser, testified that his attention to the property was attracted by the handbill posted in front of the courthouse.

While the postmaster at Locust Grove testified that none of the handbills were received by him, nor did he see any displayed in that vicinity, there was evidence that other

persons living in that neighborhood saw the notices displayed at other places and knew of the sale.

No notice of the coming sale was sent to the Cromers, and none was required either by the terms of the deed of trust or those of the statute. Code, sec. 5167.* But the evidence shows that on Sunday, the day preceding the sale, Cromer came to see his sister, Mrs. Emmett Smith, who lived about three and one-half miles from Locust Grove, and was told by her that she had heard that the property was to be sold shortly. Cromer replied that it was "just talk" and returned to Baltimore without making any investigation of the matter.

While the evidence does not show the number of persons who attended the sale it does disclose that there were at least two bidders for the property, the creditor and Mrs. Morris.

The deed from the trustee to Mrs. Morris contains the essential recitals to bring it within the purview of Code, sec. 6196. This section provides that these recitals "shall be *prima facie* evidence that such sale was regularly made." See *Ashworth* v. *Cole*, 180 Va. 108, 115, 21 S. E. (2d) 778, 781, and cases there cited.

We agree with the trial court that the evidence adduced on behalf of Cromer, the property owner, fails to overcome the *prima facie* presumption that the sale was regularly made after proper advertisement. Indeed, the evidence which the court accepted as true shows that the property was advertised "in such reasonable manner" as the trustee elected and deemed sufficient.

Unless the price at which the property was sold was so grossly inadequate as to shock the conscience of the chancellor and raise a presumption of fraud, the sale must stand. *Hopkins* v. *Givens*, 119 Va. 578, 580, 89 S. E. 871; *Perdue* v. *Davis*, *supra* (176 Va., at page 106).

In approaching this phase of the case it should be

---

*The statute, which the parties in the deed of trust agreed should govern the method of advertisement and foreclosure, expressly provides that "no notice to the grantor or his successor" is "required."

remembered that we are here concerned with the forced sale value, or foreclosure value, of property as is fixed by a sale at public auction, fairly conducted after reasonable advertisement. Such forced sale value is rarely equivalent to the fair market value as is fixed by negotiations between one who is not compelled to sell and one who is not compelled to buy. In the present case such evidence as was adduced relates rather to the fair market value, and even then is vague and unsatisfactory.

Cromer paid from $125 to $150 for the land in 1937, and erected a frame bungalow thereon at a cost not disclosed. At the time of the sale the house was vacant, the land was "grown up in bushes and briars," and the bungalow and two small out-buildings were badly in need of repair. After repairing the buildings Mrs. Morris insured them for $750. What she spent on the repairs is not shown.

Neighbors, testifying for Cromer, estimated the fair market value of the property at from $1,000 to $1,500, but none testified that he had inspected it. A local realtor, who inspected the house after it had been repaired by Mrs. Morris, thought the fair market value was $1,500.

On the other hand, a local realtor who saw the property after it had been put in repair, testifying for Mrs. Morris, fixed the fair market value at from $600 to $700.

Here, too, the decision of the trial court, upon conflicting evidence, has fixed the fair market value at the figures last mentioned. Under well-settled principles this finding is binding on us. While the price at which the property was sold is small, under the evidence adduced we cannot say that it was so grossly inadequate as to shock the conscience of the court and raise a presumption of fraud.

There is no evidence that the trustee was guilty of any fraud. Neither is there any suggestion that he showed any partiality toward or was in collusion with the purchaser. (Compare *Rohrer* v. *Strickland*, 116 Va. 755, 82 S. E. 711.) Nor is there any claim that there was any irregularity in the sale other than the insufficiency of the advertisement which we have discussed.

■ In this situation, assuming that inadequacy of price has been shown, that circumstance standing alone does not require that the sale be set aside. *Hopkins* v. *Givens, supra; Perdue* v. *Davis, supra.*

■ The appellant's attitude and neglect were such as to evoke little sympathy. The debt was more than six years past due. He ignored repeated demands to pay the small balance. When he was informed by his sister that the property was about to be sold, he was not sufficiently interested to inquire into the matter. He alone is to blame for the situation of which he now complains.

We find no error in the record and the decree appealed from is.

*Affirmed.*

MILLER, J., dissenting.

I am unable to agree with the conclusion reached in the majority opinion.

. Appellant sought rescission of the sale and cancellation of the trustee's deed on the grounds that (a) the property was improperly and insufficiently advertised, and (b) the price obtained grossly inadequate.

The terms of the deed of trust and the requirements of section 5167 of the Code in effect at the date of the execution of the deed permitted the property to be advertised "in such *reasonable manner* as the trustee may elect." (Emphasis added.) His discretion was wide, but not unlimited. He could select the method of advertising provided it was reasonably calculated to notify the public within the customary area of the time, place and terms of the sale. Anything short of that cannot be termed advertising in a reasonable manner.

The sole mode selected was to mail handbills to different post offices in Orange county with the request that they be posted. Whether this constituted a proper exercise of his discretion and a sufficient performance of his duties present a factual question. It is to be determined and measured by.

a consideration of the local custom obtaining, if any, relative to the manner in which similar sales are advertised, what was actually done in this instance, the results obtained, and any other circumstances tending to establish the ultimate effectiveness of his actions.

It appears that there are at least fifteen post offices in the county. The trustee admits that he personally posted only one bill—that at Orange courthouse. Prior to the sale, he visited several places to which bills had been mailed, but neither inquired nor ascertained if any had been actually posted.

To whom and where he mailed these bills for posting was a fact peculiarly within his knowledge. Yet, from his and all other testimony in the case, it is only affirmatively established that they were posted in three places.

The trustee testified that the custom in Orange county for advertising sales under deeds of trust executed when this was executed; which was in 1939, was by posting bills at Orange and mailing others to the post offices in the county. However, another well-informed witness who is the publisher of the local newspaper testified that judicial and trustee's sales were advertised in that paper in ninety per cent of the cases in which such sales are now made.

Appellant had no knowledge of the actual time and place of sale. The debt was past due about six and one-half years. The unpaid principal and accumulated interest amounted to between fifty and one hundred dollars. The last curtail had been made in 1943. The debtor was not advised or warned that unless payment was made by some fixed time his property would be sold. If the time and place of sale had been advertised in the customary manner then obtaining, the chances are he would have learned of it and been able to protect his interest, though notice to him is not mandatory.

The five and one-half acres of land and modest residence thereon face State highway No. 20 and are slightly more than a quarter of a mile from Locust Grove, yet no hand-bill was posted at that nearby village and post office and

none placed upon the property. The nearest posted bill was more than three miles from the property and the sale held in Orange, Virginia, nineteen miles distant. These circumstances and conditions were not calculated to notify or secure attendance of persons likely to purchase.

One resident of Locust Grove who was interested in purchasing a home in that community testified that the property was worth $1,000. From the information he received, he erroneously thought it was to be sold on February 6th, and was not present at the sale. Had it been advertised in Locust Grove, he most likely would have known the correct day of sale.

There were only two bidders, the creditor and the purchaser. Though both the trustee and purchaser testified, the evidence does not show that any persons other than the creditor, trustee and purchaser attended. The purchaser started bidding at $100, then the creditor submitted a bid of $200 which was raised by the purchaser to $250. There the bidding ended. It might well be concluded that the creditor was only concerned in bidding an amount sufficient to insure payment of her secured debt and was not interested in obtaining the property at a reasonable price. She made only one bid and quit. This cannot be correctly termed a well attended sale where spirited bidding obtained, though "spirited bidding" is a recital in the trustee's deed.

The mere selection of a proper method of advertising by the trustee is not a performance of the duty imposed upon him. It is encumbent that he actually advertise the property in a reasonably sufficient manner.

In my opinion, the sum total of these facts and circumstances establish that the property was not advertised in an adequate manner. I deem it ample to overcome the *prima facie* presumption accorded the recital in the trustee's deed that the sale was properly advertised.

The majority opinion sustains the finding of the chancellor that the property was properly and adequately advertised. Having so concluded, it then considers the sufficiency of the price as a matter wholly separate and apart from the adver-

tisement and the circumstances incident thereto. I do not think the two assignments of error can be so completely divorced from each other.

Even if it be conceded that the advertisement complied with the letter of the deed of trust and the pertinent statute, yet I think the effectiveness and practical sufficiency of that bare compliance must be weighed and considered to some extent in finally passing upon the adequacy of the price and the rights of the parties. It secured the attendance of only two bidders. One of these was partially, if not wholly, interested in the payment of her debt instead of actually desiring to acquire property. When her one bid was made, all competition ceased.

· In affirming the decree, all conflicts in the evidence are resolved in favor of appellees—and the value found to be $600 to $700. If the very minimum figure of $600 be accepted, the sale price was only 41 per cent of that sum.

The cases of *Hopkins* v. *Givens,* 119 Va. 578, 89 S. E. 871, and *Perdue* v. *Davis,* 176 Va. 102, 10 S. E. (2d) 558, are cited as authority for the principle applied and the conclusion reached. I have no difficulty in agreeing with the fundamental principle announced—that is—that the sale should not be disturbed for inadequacy of price unless it be so great as to shock the conscience of the court and raise a presumption of fraud. Yet I also believe that if the price be decidedly inadequate, all circumstances surrounding the sale should be scrutinized and weighed in arriving at the ultimate conclusion. In other words, the practical sufficiency of the advertisement, the number of persons in attendance or possible bidders present, the character of the bidding, and the like should be considered.

In sustaining the sale in *Hopkins* v. *Givens, supra,* circumstances of like character were recognized and accorded their due weight in the final analysis. It was there established that handbills were posted in the town where the property was located and "the sale was well attended and several persons participated in the bidding." Nor did the complaining party there prove the value of the property sold.

The subject matter was an undivided interest in a lot and the witnesses gave their opinion merely as to the value of the entire lot. They expressed no opinion upon the value of the interest sold.

In *Perdue* v. *Davis, supra,* the owner was aware of the character and manner of advertising many weeks prior to the sale. He had secured a months adjournment and readvertisement before the ultimate sale was held. There were four participating bidders. The minimum value of the land was $6,000, and the sale price $3,250—that is—the sale was for more than 54 per cent of the minimum value.

I find here no such saving circumstances as appear in those two cases.

The same general principle is applicable when judicial sales are attacked for alleged inadequacy of price. Certainly after confirmation, they may not be set aside solely for mere inadequacy of price unless it be of such moment as to in and of itself shock the conscience of the court and raise a presumption of legal fraud. In 50 C. J. S., "Judicial Sales", sec. 59, p. 678, we find the rule stated thus—

"Although there is some authority to the contrary, ordinarily a judicial sale will not be set aside, even though the price is grossly inadequate, unless the inadequacy is so great as in itself to raise a presumption of fraud, unfairness, or mistake, or to shock the conscience of the court, and a resale may be reasonably expected to result in a substantially higher price."

Among the cases there cited in which mere inadequacy of price was deemed sufficient to vitiate the sale is *Walker* v. *Smith*, 144 Va. 824, 130 S. E. 768. A bid of $1,000 had been accepted and confirmed by decree of court. An upset bid of $2,000 was made. The evidence previously submitted to the commissioner disclosed the value to be $2,250. The original purchase price of $1,000 was therefore about 44 per cent of the value determined from the testimony theretofore taken. The trial court set aside the sale and directed a resale with the bidding to start at $2,000,

the amount of the upset bid. Upon appeal, that action was approved and affirmed.

That sale had been made "at public auction after due and sufficient advertisement in accordance with the directions contained in the decree," nevertheless, in commenting upon the inadequacy of the price, which was the sole ground of attack made upon the sale, the court said:

"With this state of facts, was $1,000.00 a grossly inadequate price? We think that there can be but one answer to that question, and the decree of the learned chancellor in the lower court, holding that it was grossly inadequate, seems to us in that particular to be clearly right. We have been cited to no case, nor have we been able to find one, where the disparity was as great, that the courts have not held it to be grossly inadequate."

There the confirmed sale price of $1,000 bore the relation of about 44 per cent to the previously ascertained value of $2,250. It was held to be grossly inadequate and the sale set aside. Here the $250 sale price bears the relation of about 41 per cent to the ascertained value of $600 and is allowed to stand.

I am not unmindful that public bidding should be fostered and not discouraged. To accomplish that, judicial sales should not be set aside for mere inadequacy of price unless it be so pronounced as to shock the conscience, or the sale be attended with other circumstances of unfairness or mistake. *Dunn* v. *Silk*, 155 Va. 504, 155 S. E. 694, 71 A. L. R. 667; *Keyser* v. *Federal Land Bank*, 169 Va. 368, 193 S. E. 489, and *Schweitzer* v. *Stroh*, 182 Va. 842, 30 S. E. (2d) 689.

This, I think also applies with equal reason and full force to foreclosure sales. Yet, in my opinion, full recognition and adherence to that principle does not require or justify approval of a sale at a price so definitely and grossly inadequate with relation to the conceded value of the property as here disclosed when made under the conditions and circumstances appearing in this record.

STAPLES, J., concurs in this dissent.