UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Ortiz, Causey and Callins
Argued at Lexington, Virginia


WILLIAM MICHAEL ST. JOHN

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0650-25-3                      JUDGE DANIEL E. ORTIZ
                                                    MARCH 10, 2026
ROBERT ST. JOHN, ET AL.


FROM THE CIRCUIT COURT OF SMYTH COUNTY
Sage B. Johnson, Judge

Michael H. Brady (Ross C. Allen; P. Thomas DiStanislao;
Whiteford, Taylor & Preston L.L.P, on briefs), for appellant.

Reelia R. Watson (Watson Law, on brief), for appellees Joseph M.
Shaw, Co-Trustee of the Mary Virginia St. John Trust, Nancy
Shaw, Co-Trustee of the Mary Virginia St. John Trust, and Nancy
St. John Moss.

No brief or argument for appellees Robert St. John and Angela
St. John Little.

This appeal arises out of the circuit court's decree authorizing the sale of a property

owned by five tenants in common in unequal shares to the two majority-owner tenants after

proceedings before a special commissioner.  Michael St. John, a minority owner of the property,

challenges that decree, arguing the circuit court erred by confirming the special commissioner's

report, valuing the property at $500,000, and ordering the sale to the majority owners.  Given

that the commissioner's report was not plainly wrong and the court's order to sell the property to

the majority owners for $500,000 was supported by the record, we affirm.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A)

BACKGROUND

This case involves property owned by five heirs as tenants in common.[1]  Together, Mary Virginia St. John Shaw[2] and Nancy St. John Moss ("majority owners") own two thirds of the property in equal one-third shares.  Angela St. John Little, Robert St. John,[3] and Michael St. John ("minority owners") each own equal one-ninth shares.  In 2012, the majority owners filed a complaint seeking partition of the property.

To oversee the case, the circuit court appointed a special commissioner.  The court directed the commissioner to determine: (1) who owned the property and in what proportions; (2) whether the property was susceptible to partition in kind; (3) whether one or more of the parties was willing to purchase the property; and (4) whether the interests of the parties would be promoted by a sale.  After significant delays,[4] the special commissioner scheduled an evidentiary hearing on the decree for September 2019.  Michael St. John responded, "if the property can not [sic] be partitioned in kind I would have interest in purchasing some or all of the property."  Days later, Michael, *pro se* at the time, objected to the hearing, contesting the commissioner's authority to hear the case, and did not participate.

---

[1] The property at issue includes five parcels of land owned by Mae St. John until her death in 1990.  Mae left the property to her three children, Mary St. John Shaw, Nancy St. John Moss, and William St. John, Jr., in equal shares.  William St. John, Jr. passed away in 2009, leaving his one-third share of the property in equal shares to his three children, Angela St. John Little, Robert St. John, and Michael St. John, the appellant.

[2] When this suit began, Mary was still living and brought the complaint in her own name.  Mary died in 2014, leaving her one-third share to a trust in her name.  Mary's children, Joseph and Nancy Shaw, carry on this suit as co-trustees of the Mary Virginia St. John Shaw trust.

[3] Victoria St. John held a lien against Robert St. John, arising out of a 2005 judgment.

[4] The special commissioner's hearing was delayed after Michael's counsel filed a motion to withdraw.  Michael subsequently reported several scheduling conflicts with the hearing before objecting to the commissioner's authority to conduct the hearing.

The commissioner continued with the scheduled hearing. Three of the property owners appeared at the hearing: the two majority owners and Angela St. John Little, a minority owner. Michael and Robert St. John did not appear. Each of the owners present testified. Nancy St. John Moss, a majority owner, testified to the history of the property and improvements she paid for over the years. Both majority owners testified that they were prepared to purchase the three minority shares of the property, which represented one third of the property. All parties present agreed that the majority owners' purchase of the property from the one-ninth shareholders would be an acceptable partition of the property. The commissioner further considered the then-current tax assessments of the property, assessing the property to be worth $415,200, and heard testimony from the deputy commissioner of revenue corroborating the assessed value.

The commissioner filed his report in March 2023. In it, he estimated the value of the property to be $415,200, and found: (1) the majority owners each owned one third of the property, and the minority owners each owned one ninth of the property; (2) the property could not be partitioned in kind by value; (3) the majority owners were willing to purchase the minority shares of the property; and (4) all parties' interests would be promoted by the property's sale. After the commissioner filed his report, Michael St. John emailed the commissioner later that day with an offer to buy the entire property for $500,000. Michael then filed a response opposing the report, objecting to its confirmation, with an attached 2009 private appraisal estimating the property to be worth more than the $415,200 finding of the commissioner. The majority owners moved to confirm the commissioner's report.

The circuit court heard argument on the majority owners' motion to confirm the report in June of 2023. There, Michael explained that his $500,000 offer was based on the value of the tax assessments in the commissioner's report, plus twenty percent. Counsel for the majority

owners agreed that, should the court find the value of the property to be $500,000, the majority owners were prepared to purchase the three minority shares based on that amount. Soon after the hearing, and after avoiding participation in the process for years, Michael offered to buy two parcels of the property from the other tenants.

In January 2024, the court issued a letter opinion, confirming the commissioner's report in part. The court confirmed the commissioner's factual findings, including the ownership of the property, the difficulty of partitioning the property in kind by value, the majority owners' willingness to purchase the minority shares, and the parties' interest in a sale. Then, finding the property could not be partitioned in kind, the court ordered the majority owners to purchase the minority owners' shares of the property. The court disagreed, however, with the commissioner's valuation of the property. Relying on the parties' testimony that the tax assessments "were close to the fair market value" and Michael's offer to purchase the property for $500,000, the court valued the property at $500,000. After the court ordered the majority owners to pay each minority owner one ninth of the property's value, as their interest entitled them to, Michael responded with a motion to reconsider and vacate the opinion. With it, he included a private appraisal commissioned in February 2024, after the court issued its letter opinion, estimating the property's value at between $825,000 and $909,400.

The court denied Michael's motion. It reasoned that: the majority owners agreed to purchase the three minority shares of the property based on the $500,000 offer; Michael St. John himself estimated the property to be worth $500,000, as evident by his March 2023 offer following the commissioner's report; and that $500,000 was a reasonable adjustment to the commissioner's valuation given the time passed. It then issued a final order incorporating the

letter opinion, authorizing the majority owners to purchase the three one-ninth shares of the property's $500,000 value. Michael appealed.[5]

ANALYSIS

I. The circuit court did not err in confirming the commissioner's report because the commissioner's findings were not plainly wrong.

Michael St. John argues the circuit court erred by confirming the commissioner's report because: (1) the commissioner reported that Michael St. John did not offer to buy the entire property prior to the September 2019 hearing; (2) the commissioner's valuation of the property at $415,200 was too low; and (3) the commissioner failed to provide notice of the report to the administrator of Michael's father's estate, nor Victoria St. John, a lienholder. Because the commissioner's factual findings were not plainly wrong, however, the circuit court did not err by confirming the report.

"On appeal, a decree which approves a commissioner's report will be affirmed unless plainly wrong." *Cartograf USA, Inc. v. Comerica Bank*, 85 Va. App. 1, 16 (2025) (quoting *Daly v. Shepherd*, 274 Va. 270, 273 (2007)). While this rule is not applicable to a commissioner's conclusions of law, it applies "with particular force" to the commissioner's findings of fact. *Hill v. Hill*, 227 Va. 569, 577 (1984) (citing *Hudson v. Clark*, 200 Va. 325 (1958)). "Even where the commissioner's findings of fact have been disapproved, an appellate court must give due regard to the commissioner's ability, not shared by the [circuit court], to see, hear, and evaluate the witnesses at first hand." *Id.*

Under Code § 8.01-609, a commissioner in chancery "shall examine, and report upon, any matters as may be referred to him by any court." Rule 3:23 defines the role of the commissioner. A commissioner is empowered to require production of evidence, call witnesses,

---

[5] We dismissed Michael's initial appeal for lack of necessary parties. The parties consented to the amended notice of appeal, preserving objections, and Michael appealed again.

and make evidentiary rulings, "proceed[ing] with all reasonable diligence to execute the decree of reference." Rule 3:23(b), (c). Then, the commissioner "must prepare a report stating his findings of fact and conclusions of law with respect to the matters submitted by the decree of reference." Rule 3:23(d).

The commissioner's report "shall not have the weight given to the verdict of a jury on conflicting evidence, but the court shall confirm or reject such report in whole or in part, according to the view which it entertains of the law and evidence." Code § 8.01-610. "The report 'should be sustained unless the trial court concludes that the commissioner's findings are not supported by the evidence.'" *Cartograf USA, Inc.*, 85 Va. App. at 16 (quoting *Hill*, 227 Va. at 576-77).

Here, the circuit court referred the majority owners' case to the commissioner to consider several factual questions, including whether the property could be partitioned in kind, whether one or more parties were willing to purchase the entire property, and whether the interests of the parties would be promoted by a sale. To do so, the commissioner scheduled the September 2019 hearing to consider the parties' evidence. In response, Michael told the commissioner, "*if* the property can not [sic] be partitioned in kind I *would* have interest in purchasing some or all of the property." (Emphases added). Michael then notified the commissioner he would not participate in the hearing, objecting to the commissioner's authority to hear the case.

Michael had the opportunity to present evidence of the property's value and suitable buyers at the September 2019 hearing. But, despite having notice of the hearing, Michael did not participate. The parties present offered tax assessments valuing the property at $415,200, and the testimony of the Smyth County Deputy Commissioner of Revenue, who spoke to the assessment's accuracy. Nancy, one of the majority owners, appeared, and testified that she paid for improvements to the property over the years, along with the property taxes since 2014. She

further testified that the majority owners were prepared to buy out the interest of the three minority shareholders. The trustee for Mary's estate, the other majority owner, agreed. So too did Angela, the present minority shareholder.

Thus, to determine a suitable buyer, the commissioner considered three of the property owners' testimony on the one hand, each of whom agreed to the majority owners' purchase of the minority shares, and Michael's email that "*if* the property can not [sic] be partitioned in kind I *would* have interest in purchasing some or all of the property" on the other. (Emphases added). Whereas Michael followed his conditional interest in purchasing the property with an explicit refusal to participate in the hearing, the majority owners appeared, presented tax assessments on the property's value, and testified to their willingness and ability to purchase the entire property.[6] With that, the commissioner recommended the majority owners purchase the three one-ninth shares based on the tax-assessed value of $415,200. It was only after the commissioner filed his report that Michael first offered to purchase the property for $500,000, then submitted a private appraisal to challenge the commissioner's valuation.

Based on that evidence, the court confirmed the commissioner's findings in part. The court confirmed the commissioner's factual findings on ownership of the property, that the minority shares of the property could not be partitioned by value, the suitability of potential buyers, and that a sale of the property would promote the interests of the parties. But, while the court confirmed the commissioner's factual findings and recommendation, it disagreed with the commissioner's valuation of the property. Finding that partition could not be made and a sale would promote the interests of the parties, the court was left to determine the property's value.

---

[6] *See Chang v. First Colonial Sav. Bank*, 242 Va. 388, 391 (1991) (requiring an offer to be "clear, definite, and explicit, and leaves nothing open for negotiation").

Where the circuit court diverged from the commissioner's report was to raise the value of the property to $500,000, adjusting for appreciation since the 2019 hearing. In raising the value, the circuit court agreed with Michael that the $415,200 valuation was too low. Had Michael participated in the hearing and offered his appraisal of the property, the commissioner may have estimated a higher property value or recommended a different outcome. But Michael did not offer to buy the property, nor present evidence on its value, until after the commissioner concluded his findings. Despite Michael's prior refusal to participate, the court considered Michael's evidence offered after the 2019 hearing and authorized the sale of the property for $500,000 to the majority owners, a price that Michael endorsed as fair.

Finally, Michael contends that the commissioner's report is deficient because the commissioner neglected to provide notice of the report to either the administrator of Michael's father's[7] estate or to Victoria St. John, a lienholder. But lack of notice to the other interest holders does not render the report deficient as to Michael, because Michael had notice of the report. The commissioner filed his report on March 22, 2023, and Michael filed his response on April 10. Despite his refusal to participate, Michael had notice of the proceedings throughout the suit. As such, for the purpose of this appeal, the commissioner "proceed[ed] with all reasonable diligence to execute the decree of reference." Rule 3:23(b).

The commissioner based his report on evidence presented at the September 2019 hearing, where all parties present agreed to the sale of the property to the majority owners. The evidence that Michael presented after the fact does not show that recommendation to be plainly wrong. *See Cartograf USA, Inc.*, 85 Va. App. at 16 ("[A] decree which approves a commissioner's

---

[7] Michael's father, William St. John, Jr., has not owned any interest in the property since his death in 2009. After his death, he left his one-third interest in the property to his children, Angela, Robert, and Michael, now divided into equal one-ninth shares. In a February 2024 filing, the administrator of Michael's father's estate acknowledged that Michael's father's estate held no interest in the property.

report will be affirmed unless plainly wrong." (quoting *Daly*, 274 Va. at 273)). Thus, given that the commissioner's report "should be sustained unless the trial court concludes that the commissioner's findings are not supported by the evidence," the circuit court did not err by confirming the report. *Id.* (quoting *Hill*, 227 Va. at 576-77).

II. The circuit court did not abuse its discretion by ordering the property sold to the majority owners because the sale and valuation were supported by the record.

Michael contends the circuit court abused its discretion by ordering the sale to the majority owners because: (1) the court should not have relied on Michael's $500,000 offer as indicative of the fair market value; (2) it should not have ordered the sale to the majority owners, rather than Michael or a third party; (3) it should not have disregarded Michael's appraisals of the property value; and (4) it failed to further determine the fair market value through appraisal or auction. We disagree.

We review a trial court's decision to partition real estate for an abuse of discretion. *De Benveniste v. Aaron Christensen Fam., LP*, 278 Va. 317, 325-26 (2009). In that, the factual findings below are binding unless plainly wrong or without support. *Orgain v. Butler*, 255 Va. 129, 132-33 (1998). Where the circuit court disagrees with the commissioner's findings, we must review the evidence and determine whether, under a correct application of the law, the evidence supports the findings of the court or those of the commissioner. *Id.* at 132.

Under Code § 8.01-83, "[w]hen partition cannot be conveniently made, the entire subject may be allotted to any one or more of the parties who will accept it and pay therefor to the other parties such sums of money as their interest therein may entitle them to[.]"[8]

---

[8] The General Assembly amended Code § 8.01-83 in 2020, but the prior version of the statute still applies to actions brought before July 1, 2020. 2020 Va. HB 1605; 2020 Va. SB 553. Given that the majority owners brought this action in 2012, the prior version of the statute applies here.

"A confirmation of sale . . . is a matter within the sound judicial discretion of the court, in view of all the circumstances, and sales fairly made should not be set aside merely because the purchaser has gotten a good bargain." *Cartograf USA, Inc.*, 85 Va. App. at 22 (quoting *Schweitzer v. Stroh*, 182 Va. 842, 849 (1944)). The circuit court should measure the adequacy of the price based on the entire record and should exercise its discretion to refuse the price "only if it is so inadequate that it shocks the court's conscience, or if there are additional circumstances of unfairness." *Id.* (quoting *Jones v. Jones*, 249 Va. 565, 572-73 (1995)). While a "sale of property in a partition proceeding must be made in a manner that will bring the best price obtainable," *Orgain*, 255 Va. at 133, the existence of an appraisal, or even bid, higher than the confirmed sale price "does not provide a sufficient basis for reversing the trial court's decree," *Jones*, 249 Va. at 572; *also see Prettyman v. Chandler's Adm'rs*, 174 Va. 99, 104 (1940) (holding an offer for 44% of a property's appraised value "was not grossly inadequate").

Here, the circuit court appointed the special commissioner to determine whether "any one or more of the parties will accept the entire subject and pay therefore to the other parties such sums of money as their respective interests may entitle them to[.]" The decree further directed, "*if* no one will so accept, and [if] the Special Commissioner shall find that partition in kind cannot be conveniently made," then the commissioner was instructed to further report on a potential sale of the property to a third party. (Emphasis added). Finding that the majority owners were prepared to buy out the interests of the minority owners, the commissioner recommended the same. Michael did not offer evidence to the commissioner to aid in his determination. He submitted appraisals of the property value only after the commissioner filed his report and after the circuit court confirmed the commissioner's report.

While "an appraisal is not conclusive evidence of market value," *Jones*, 249 Va. at 573, Michael's private appraisal offered after the court confirmed the report estimated the value of the

- 10 -

property to be between $825,000 and $909,400. That appraisal does not show the court's valuation to shock the conscience. In *Prettyman*, our Supreme Court reversed a circuit court's refusal to confirm the sale of a property for an offer of 44% of the appraised value, as that offer "was not grossly inadequate." 174 Va. at 104. Here, despite what may be a bargain for the majority owners, the court's authorized price of $500,000 clears that threshold.

Moreover, the $500,000 value came from Michael's offer to purchase the property after he saw the commissioner's report.[9] At the confirmation hearing, Michael explained his $500,000 offer, recognizing that the high-end appraisals for the property did not account for remedial costs. He stated that he "figured 20 percent more of what they offered would satisfy. If they thought 400 and some odd thousand was good, $500,000 would be much better." If Michael thought $500,000 represented the fair market value of the property then, he cannot say that it shocks the conscience now. *See Collins v. Pulaski County*, 201 Va. 164, 171 (1959) (reasoning an offeror "can place his value on the property").[10]

Relying on the commissioner's findings alongside evidence heard at the confirmation hearing, the circuit court authorized the sale to the majority owners. While the court diverged

---

[9] We note that "[i]t is generally recognized that the opinion testimony of the owner of property, because of his relationship as owner, is competent and admissible on the question of the value of such property[.]" *Haynes v. Glenn*, 197 Va. 746, 750 (1956). Michael's offer to purchase the property for $500,000 was an opinion of the property's value by one of the property's owners. Thus, when determining the value of the property, the court was entitled to consider Michael's offer as a valuation of the property.

[10] We further note that "[a] litigant cannot 'approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory,' or else such arguments are waived." *Amazon Logistics, Inc. v. Va. Emp. Comm'n*, 304 Va. 107, 114-15 (2025) (quoting *Rowe v. Commonwealth*, 277 Va. 495, 502 (2009)). "Litigants cannot 'blow[] hot and cold' depending on their perceived self-interests." *Id.* at 115 (alteration in original) (quoting *Babcock & Wilcox v. Areva*, 292 Va. 165, 204 (2016)). While the issue was not briefed, nor argued, and we cannot rule on the issue, Michael offered $500,000 as a fair price for the property below. Now, on appeal, he contends the trial court erred by considering his offer as probative of the fair market value. These successive positions are inconsistent.

from the commissioner in valuing the property at $500,000, that too is supported by the evidence taken by the commissioner, along with Michael's evidence offered in opposition to the report's confirmation. Given that the circuit court's order was supported by the record, it did not abuse its discretion by authorizing the sale.

## CONCLUSION

Given that the commissioner's findings are not plainly wrong and the court's order authorizing the sale is supported by the record, the circuit court did not err by confirming the report and ordering the sale. Accordingly, we affirm.

*Affirmed*.