COURT OF APPEALS OF VIRGINIA

Present:   Judges Causey, Lorish and White
Argued at Salem, Virginia

SUZANNE E. EGOLF

v.        Record No. 1709-22-3

FIRST CITIZENS BANK & TRUST COMPANY, ET AL.

MEMORANDUM OPINION[*] BY
JUDGE KIMBERLEY SLAYTON WHITE
MAY 14, 2024

FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
Joel R. Branscom, Judge

Henry W. McLaughlin (Law Office of Henry McLaughlin, P.C., on briefs), for appellant.

Bennette H. Sharpe IV; N. Reid Broughton (Samuel J. Kaufman; Katie M. DeCoster; Richard D. Scott; Jerry Myers; Owen & Owens PLC; Sands Anderson PC; Law Office of Richard D. Scott, PC; Smith Debnam Narron Drake Saintsing & Myers, LLP, on brief), for appellees.


The trial court sustained demurrers to Suzanne Egolf's complaint and amended complaint

seeking rescission of a foreclosure sale and compensatory damages.  Egolf argues that the trial court

erred because her complaints adequately alleged that the foreclosure was void or voidable and that

she was entitled to a trial on "damages plus rescission."  For the following reasons, we affirm.

BACKGROUND

On February 6, 2017, Suzanne E. Egolf filed her complaint seeking relief following a

foreclosure sale of her property.  On November 2, 2020, the trial court heard argument on

appellees' demurrers, special pleas, and motions filed in response to the complaint.  After the

November 2020 hearing on the demurrer, the court entered an order on January 11, 2021,

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

denying appellees' demurrers, in part, and sustaining appellees' demurrers, in part, granting appellees' motions to join Virginia Nationstar Mortgage LLC, and allowing appellant to file her amended complaint. Egolf filed an amended complaint on January 25, 2021. Again, appellees filed demurrers and special pleas in response.

The demurrer set forth several grounds for the pleading—that the complaint was not sufficient at law, that it did not state a cause of action, and that it failed to state a claim upon which the relief could be granted. No fewer than seven reasons were given as to why the demurrer should be sustained. Among those were that the damages claimed were not specifically alleged and that they were speculative. Also alleged were the specific terms within the deed of trust that would defeat the relief sought within the complaint.

On October 4, 2021, the court entered an order, denying the appellees' demurrers in part, sustaining the demurrers in part, and dismissing with prejudice certain claims and parties in the amended complaint. More than a year later, Egolf motioned for a non-suit of the case, and the court entered a non-suit order, granting Egolf a voluntary non-suit without prejudice on October 14, 2022. Egolf filed a notice of appeal on November 14, 2022.

No transcript was available of the September 2021 hearing because of technical difficulties. On December 13, 2022, Egolf filed her notice of presentation of statement in lieu of transcripts. The appellees objected to the proposed statement.

The trial court signed Egolf's statement of facts but stated that "[t]his statement is entered subject to the 'Order In Re Objections to Statement in Lieu of Transcript' entered this date." The court then, as part of the order, identified the ways the statement in lieu of a transcript was inaccurate and incomplete.[1] Egolf's statement of facts did not state that the November 2, 2020

---

[1] Rule 5A:8(d) permits the trial judge to "certify the manner in which the record is incomplete."

hearing was entirely remote. Regarding the same hearing, "[t]he statement fails to fully state the arguments to the Court, which were consistent with but broader than the memoranda submitted by counsel, as shown by the transcript of the hearing." Regarding the September 8, 2021 hearing, "[t]he statement fails to fully state the arguments to the Court, which were consistent with but broader than the memoranda submitted by counsel, and were material to the Court's decision, but no transcript of the hearing is available." The statement inaccurately said that the court sustained with prejudice counts two, three, four, and five when the court actually sustained the appellees' demurrers, not the counts, from the September 8, 2021 hearing. And, lastly, the statement leaves out reasons for the dismissal of BKC Properties, Inc. and Northstar Mortgage, LLC, and the counterclaim and crossclaim filed by BKC Properties, Inc. from the September 8, 2021 hearing. The court also noted that Egolf failed to provide a copy of the statement of facts to Virginia Nationstar Mortgage LLC as well as to Samuel J. Kaufman, counsel for BKC Properties, Inc., and Jerry Myers, counsel for First Citizens, in violation of Rule 5A:8(c). Finally, the court ruled that "[a] transcript of the hearing that occurred on November 2, 2020, has been filed with the Court, and will be included in the record on appeal."

ANALYSIS

"On appeal, we presume the judgment of the trial court is correct." *Bay v. Commonwealth*, 60 Va. App. 520, 528 (2012). An appellant has the responsibility to provide a complete record to the appellate court. *Twardy v. Twardy*, 14 Va. App. 651, 658 (1992) (en banc). "Transcripts and statements of facts serve the identical purpose on appeal—to provide a record of the incidents of the trial proceeding." *Anderson v. Commonwealth*, 13 Va. App. 506, 508-09 (1992). "Our review of an appeal is restricted to the record." *Oliver v. Commonwealth*, 35 Va. App. 286, 296 (2001). So, if there is not a "sufficient record from which we can determine whether the lower court has erred in the respect complained of . . . the judgment will

- 3 -

be affirmed." *Green v. Commonwealth*, 65 Va. App. 524, 534 (2015) (quoting *Smith v. Commonwealth*, 16 Va. App. 630, 635 (1993)).

"If . . . the transcript is indispensable to the determination of the case, then the requirements for making the transcript a part of the record on appeal must be strictly adhered to." *Smith v. Commonwealth*, 32 Va. App. 766, 771 (2000) (alteration in original) (quoting *Turner v. Commonwealth*, 2 Va. App. 96, 99 (1986)). A transcript of any proceeding or a written statement of facts in lieu of a transcript becomes part of the record if filed in the circuit court clerk's office within sixty days after entry of final judgment. Rule 5A:8(a), (c). "When the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission shall not be considered." Rule 5A:8(b)(4)(ii); *see also Smith*, 32 Va. App. at 771 (holding that "[t]his Court has no authority to make exceptions to the filing requirements" for transcripts "set out in the Rules" (quoting *Turner*, 2 Va. App. at 99)).

The trial court entered the final order on October 14, 2021, without any opinion stating the basis for its conclusions. Egolf filed a timely written statement of facts in lieu of transcripts on December 13, 2022.[2] The appellees' filed an objection to Egolf's statement of facts. Following Rule 5A:8(d), the trial court signed Egolf's written statement and certified "the manner in which the record is incomplete." The trial court concluded that without a transcript for the September 8, 2021 hearing, the record on appeal was incomplete, and listed five ways that Egolf's statement was inaccurate or incomplete. For example, the court certified that Egolf's statement "fails to fully state the arguments to the Court, which were consistent with *but broader than the memoranda submitted by counsel*, and were material to the Court's decision."

---

[2] On January 11, 2023, Egolf filed a transcript from the hearing on the demurrers to her *original* complaint. That transcript was not filed timely and is not a part of the record. Rule 5A:8(a).

- 4 -

(Emphasis added). Where Egolf's statement alleges that "counsel argued according to the memoranda of law submitted by counsel," the trial court said that "summary is not correct." Where Egolf's statement alleges that "counsel argued based on the pleadings filed by counsel on such demurrers," again, the trial court said that "summary is not correct." The trial court also found that Egolf's written statement of facts "d[id] not contain all arguments . . . relied upon by the [trial c]ourt and necessary to permit resolution of any issue on appeal" regarding the September 8, 2021 hearing.[3] However, the trial court did not include additional information or detail the arguments it did rely on in sustaining the demurrer.

We recently held that where an "appeal challenges the correctness of a written opinion of the trial court involving pure issues of law where the parties' respective positions were repeatedly set forth in their pleadings in the trial court," a transcript of a hearing on that motion was not indispensable. *Shaw-McDonald v. Eye Consultants of N. Va., P.C.*, 79 Va. App. 576, 582 n.2 (2024); *see also JSR Mech., Inc. v. Aireco Supply, Inc.*, 291 Va. 377, 382 (2016) (finding a transcript not indispensable when the record "sufficiently sets before the Court the pure issue of law" on appeal); *Veldhuis v. Abboushi*, 77 Va. App. 599, 607 (2023) ("[T]he transcript is not indispensable . . . as we are able to dispose of the case by considering other portions of the record, namely the letter opinion issued by the trial court."). Previously, we held that "if the record on appeal is sufficient in the absence of [a] transcript to determine the merits of the

---

[3] When a party files objections to a written statement of facts in lieu of transcript, the trial court must:

      (1) overrule the objection; or
      (2) make any corrections that the trial judge deems necessary; or
      (3) include any accurate additions to make the record complete; or
      (4) certify the manner in which the record is incomplete; and
      (5) sign the transcript or written statement.

Rule 5A:8(d).

appellant's allegations, we are free to proceed to hear the case." *Salmon v. Commonwealth*, 32 Va. App. 586, 590 (2000) (alteration in original).

This is not one of those cases. Here, we have no written opinion to consider. While the record does contain various memoranda filed by the parties, the trial court explicitly stated that counsel did not argue according to those memoranda nor according to the pleadings filed. Further, the trial court certified that the arguments presented at the September 2021 hearing were both *broader* than those presented by the parties in their written submissions and that these differences were *material* to the court's ultimate conclusion. Without a transcript or accurate and complete written statement of facts, the record does not contain the arguments presented to the trial court, the basis on which the trial court made its findings, or the reasons given by the trial court for its rulings.

The problem with the record is compounded by the opening brief that Egolf filed in this Court. Rule 5A:20(e) requires an opening brief to contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." "[W]here a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017) (quoting *Sneed v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010)). This Court has held that making one reference to a single case and failing to support arguments "with any legal analysis or authority from [that case] or any other source" constitutes a failure to comply with Rule 5A:20(e). *Id.* at 745-46.

Egolf did not include principles of law or authorities relating to each assignment of error in way that created an argument. Egolf did, at least, provide a standard of review. But an opening brief must contain more than a correctly stated standard of review. What follows is the entirety of Egolf's argument that the trial court erred by sustaining the demurrer, as stated in

assignment of error 2. After a heading stating that "It was Error to Deny Rescission without a Trial because the Foreclosure Breached the Statutory Requirement as to Advertisement," the brief contains one sentence: "Breach of Va. Code Section 55-59.2 as to the number of advertisements is statutorily grounds on petition to hold a foreclosure voidable, which was an issue that should have been allowed to go to trial, particularly because of the loss of equity iof [sic] about $100,000." The remaining assignment of error[4] is longer than the argument in the brief purportedly supporting the same. In sum, the argument section provides no analysis of the statute it relies on, or the two cases it cites. It is instead filed with conclusory assertions and requests for relief.

As a court of review, we are "entitled to have the issues clearly defined and to be cited to pertinent authority. The appellate court is not a depository in which the appellant may dump the burden of argument and research." *Ceres Marine Terminals v. Armstrong*, 59 Va. App. 694, 708

---

[4] Assignment of error 3 states:

> The trial court erred in that part of its order as to the amended complaint that dismissed with prejudice Egolf's rescission claim (in all counts of her amended complaint) and which dismissed all of her damage claims except for her damage claim in Count One. This was error because (a) Egolf pled in the amended complaint grounds for rescission based on the statutory provision that a foreclosure can be held voidable and therefore rescinded for lack of proper advertisement for foreclosure (in this case for foreclosure based on three daily advertisements instead of the required four weekly advertisement), further after such inadequate advertisement, the high bid at the auction was only one-fourth of the value of the subject home; and (b) the amended complaint pled that BKC Properties, after locking Egolf out of the home, negligently damaged the home by causing substantial damage to the home, including allowing leakage, so that, even if she obtains rescission, she will have damages exceeding loss of equity. Further she pled other damages in addition to loss of equity, including but limited to relocation cosrts [sic] and costs to retain legal counsel to defend against eviction, plus interest on such additional economic damages. [Error preserved at R 128-139; 250-251, 305-306]

(2012) (quoting *Fadness v. Fadness*, 52 Va. App. 833, 850) (2008)). "Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration. We will not . . . correct deficiencies in a brief." *Turner v. Commonwealth*, 67 Va. App. 46, 61 (2016) (quoting *Buchanan v. Buchanan*, 14 Va. App. 53, 56 (1992)). This Court has held that an appellant's failure to comply with Rule 5A:20 was significant when he made "one reference" to one case and failed to "support [his] argument with any legal analysis or authority" from that case or "any other source." *Bartley*, 67 Va. App. at 745. Such skeletal arguments leave this Court "without a legal prism through which to view" the alleged error. *Id.* at 746. Unlike my dissenting colleague who provides a comprehensive legal analysis of potentially relevant issues,[5] we reject Egolf's invitation to assume the position of an advocate by independently determining how, if at all, the cited authorities support Egolf's argument. This is particularly the case where the position Egolf outlined, at oral argument, would require a novel interpretation of Code § 55-59.2.

Thus, given the combination of the incomplete record for review and the insufficiency of Egolf's opening brief, her arguments on appeal are waived. *See* Rule 5A:8(b)(4)(ii); Rule 5A:20(e).

CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*

---

[5] While my dissenting colleague asserts that appellant's noncompliance with Rule 5A:20 is insignificant, her dissent spans the better part of four pages analyzing the Code § 55-59.2 claim, citing two cases and distinguishing one of them. On that issue, the appellant's argument consisted of one sentence and cited no cases. On the claim that the sales price was unconscionable, my colleague's analysis spans three pages and cites ten cases; the appellant's argument consisted of four sentences and a reference to one case not otherwise analyzed.

Lorish, J., concurring.

I agree that Egolf's arguments are defaulted under Rule 5A:20(e). Because the Rule 5A:20(e) violation independently supports default here, I would not reach the question of whether the transcript is indispensable in this case requiring default under Rule 5A:8.

I agree, however, that the lack of transcript magnifies the deficient briefing in this case, collectively justifying the exercise of this Court's discretion in treating each assignment of error as waived under Rule 5A:20(e). Without the benefit of an opinion from the trial court explaining its reasoning, or a transcript documenting the same, the important issues in this case have not been "clearly defined" with "pertinent authority" by a brief that addresses three separate assignments of error with a total of five sentences of argument. *Ceres Marine Terminals v. Armstrong*, 59 Va. App. 694, 708 (2012) (quoting *Fadness v. Fadness*, 52 Va. App. 833, 850 (2008)).

Finally, I would note that the exercise of discretion in finding a procedural default does not work an obvious injustice here. Judge Causey's dissent presumes that pleading any technical violation of the advertising requirements set out in Code § 55.1-322 requires a trial on whether rescission is an appropriate remedy for the same—even where the plaintiff has failed to plead facts to show that the advertising violation caused any injury. This cannot be the case. Rescission is an exceedingly rare remedy. *See Parrish v. Callahan*, 78 Va. App. 630, 646 (2023) (noting that "rescission is disfavored"); *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 115 (2008) (describing rescission as "the highest and most drastic exercise of the power of a court of chancery – to annul and set at naught the solemn contracts of parties"). And after our Supreme Court held in *Deep v. Rose*, 234 Va. 631, 638 (1988), that a violation of the statutory advertising requirements rendered a sale automatically void as a matter of law, the General Assembly quickly amended the statute to undo that result. The statute now provides that such a failure

- 9 -

"shall, upon petition, render a sale of the property *voidable* by the Court." Code § 55.1-322 (emphasis added). In effect, the General Assembly made it more difficult to obtain the remedy of rescission. In the absence of any briefing about what is required to state a claim for statutory rescission under Code § 55.1-322, and based on general principles of proximate cause, I observe only that—at a minimum—a plaintiff must plead facts to show the alleged injury *stems from* the advertising violation (versus from the foreclosure more broadly).[6] Absent such a requirement, any person could seek to invalidate any sale for technical violations of the advertising statute regardless of whether they suffered any injury as a result—conceivably including individuals who never even owned an interest in the property but nevertheless seek to enforce the rules.

As for Egolf's assignment of error suggesting that the unconscionability of the sales price required rescission here, merely pleading that the sales price was low enough to "shock the conscious" of the court is insufficient to state a claim for equitable rescission. In *Squire v. Virginia Housing Development Authority*, 287 Va. 507 (2014), our Supreme Court affirmed a trial court's decision to sustain a demurrer where a complaint sought equitable rescission by pleading that a sales price was so low as to shock the court's conscious. Noting that such a claim required evidence "'that the trustee was guilty of any fraud'" or some "'suggestion that [the trustee] showed . . . partiality toward or was in collusion with the purchaser,'" the Court explained that an "inadequate price would not necessitate that the sale be set aside." *Id.* at 519 (quoting *Cromer v. DeJarnette*, 188 Va. 680, 687 (1949)). The Court concluded its discussion of the matter: "Absent evidence of fraud, a sale will not be set aside for an inadequate price." *Id.*

For these reasons, I agree Egolf's arguments on appeal are waived.

---

[6] To the extent Egolf's complaint alleges any injury stemming from the statutory advertising violation, it is a "conclusory allegation" unsupported by any well-pleaded facts and "[w]e are not bound" by conclusory allegations. *Terry v. Irish Fleet, Inc.*, 296 Va. 129, 133 (2018).

Causey, J., dissenting.

I disagree with the majority's decision to affirm the trial court's sustainment of the demurrers because: (1) a transcript is not indispensable to the determination of this case; and (2) Egolf has sufficiently developed her arguments in support of her contentions. These conclusions follow from the procedural posture of a demurrer—we review the sustainment of demurrer de novo, by simply determining whether the pleadings state legally cognizable claims. Egolf's pleadings state legally cognizable claims. Thus, I respectfully dissent and would instead reverse the sustainment of the demurrers and remand the case for a trial on the merits.

Indispensability of Transcript

Our Supreme Court has held that when "the manuscript record sufficiently sets before the Court the pure issue of law" that is the subject of the appeal, we can proceed to the merits even when a transcript or statement of facts was not filed. *JSR Mech., Inc. v. Aireco Supply, Inc.*, 291 Va. 377, 381-82 (2016); *see Williams v. Legere*, 77 Va. App. 422, 429-30 (2023) (holding that neither the transcript nor the statement of facts was indispensable to determine whether the circuit court erred in applying rational basis review instead of strict scrutiny). The majority acknowledges the existence of *JSR* but then concludes that the transcript here is indispensable because "we have no written opinion to consider" from the circuit court.

But here, as in *JSR*, the appeal sets forth a pure issue of law and, as in *JSR*, the manuscript record sufficiently sets the issue before us. In her brief, Egolf contests the circuit court's sustainment of First Citizens Bank's ("FCB") demurrer. "[A]ppellate review of the sustaining of a demurrer *involves a matter of law*, [so] we review the trial court's judgment de novo." *Hubbard v. Dresser, Inc.*, 271 Va. 117, 122 (2006) (emphasis added) (quoting *Glazebrook v. Bd. of Supervisors of Spotsylvania Cnty.*, 266 Va. 550, 554 (2003)). "When reviewing such a judgment, *we 'accept as true all factual allegations expressly pleaded in the*

- 11 -

*complaint* and interpret those allegations in the light most favorable to the plaintiff.'" *Seymour v. Roanoke Cnty. Bd. of Supervisors*, 301 Va. 156, 164 (2022) (emphasis added) (quoting *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018)). Thus, on appeal, we need not accord deference to any factual determinations the circuit court made. Further, "[t]he purpose of a demurrer is to determine whether a [complaint] states a cause of action upon which the requested relief may be granted. A demurrer tests the legal sufficiency of facts alleged *in pleadings*, not the strength of proof." *Id.* (second alteration in original) (emphasis added) (quoting *Coutlakis v. CSX Transp., Inc.*, 293 Va. 212, 216 (2017)).[7] The manuscript record here contains Egolf's amended complaint. As we are not bound by any findings of the circuit court in our review of the sustainment of the demurrer, we need only review Egolf's amended complaint to determine whether sustainment of the demurrer was error. Thus, I would hold that a transcript was not indispensable to resolution of whether the demurrer was properly sustained.

Sufficiency of Arguments in Brief

The provisions of Rule 5A:20(e) are not jurisdictional requirements, so noncompliance with this rule does not require dismissal of the appeal or treating an assignment of error as waived. *See Jay v. Commonwealth*, 275 Va. 510, 520 (2008). Instead, we "should . . . consider whether any failure to strictly adhere to the requirements of Rule 5A:20(e) is insignificant, thus allowing the court to address the merits of a question presented." *Id.* Rather than treating an assignment of error as waived, we "may, among other things, require an appellant to re-submit the petition for appeal or opening brief." *Id.*

---

[7]Although Egolf did not provide the previously cited caselaw in her brief, my recitation of how this Court reviews a demurrer hardly qualifies as "assum[ing] the position of an advocate." This Court often recites supplemental authority, not cited by the parties, that has guided it to its decision. Further, the principles I cite are "well established," not cited in advocacy of a novel legal position. *Seymour*, 301 Va. at 164 (noting that the legal standards that apply to review of the sustainment of a demurrer "are well established").

"A demurrer, unlike a motion for summary judgment, does not allow the court to evaluate and decide the merits of a claim; *it only tests the sufficiency of factual allegations to determine whether the motion for judgment states a cause of action*." *Fun v. Va. Mil. Inst.*, 245 Va. 249, 252 (1993) (emphasis added). Our courts often make the mistake of, in effect, treating demurrers as motions for summary judgment, determining that a plaintiff's claim would not succeed on the merits and dismissing the claim. *See, e.g.*, *Assurance Data, Inc. v. Malyevac*, 286 Va. 137, 145 (2013) ("[T]he circuit court erred when it sustained Malyevac's demurrer on the ground that 'the provision is unenforceable' as a matter of law and dismissed the entire complaint for that reason."); *Almy v. Grisham*, 273 Va. 68, 76 (2007) ("In the present case, the circuit court erred in considering the factual merit of Almy's allegations in ruling on the defendants' demurrers.").

In evaluating whether Egolf has sufficiently developed the arguments in her brief, the majority appears to adopt this erroneous view—that to survive demurrer, Egolf had to establish that she would prevail on the merits of her claims. Its statement that determining whether Egolf's claims should survive demurrer "would require a novel interpretation of Code § 55-59.2,"[8] for example, demonstrates its adoption of this view.

But in reviewing an appeal from a demurrer, we "[may only] decide whether a plaintiff's factual allegations are sufficient to state a cause of action." *Almy*, 273 Va. at 76. To survive demurrer, Egolf only had to show that her pleadings contained facts that established a legal cause of action.

---

[8] At the time of the foreclosure sale, Code § 55-59.2 provided the advertising requirements for a sale conducted under a deed of trust. The current code section that provides these requirements is Code § 55.1-322. Both sections impose identical advertising requirements on the trustee for when the deed of trust does not provide for the number of newspaper advertisements.

- 13 -

*Claim Related to Failure to Follow Code § 55-59.2[9]*

Egolf's brief sufficiently develops her argument that her claim for rescission based on the trustee's failure to follow Code § 55-59.2 should have survived demurrer. As the majority acknowledges, Egolf's brief provides the correct standard of review—de novo. Egolf's brief also states that "[t]he trial court erred in sustaining the demurrers to the original complaint as to that part of the original complaint seeking rescission" and that "[t]his was error because the foreclosure was voidable by statute by reason of the breach of the statutory requirement for four weekly advertisements . . . and therefore should have been allowed to go to trial on th[at] issue[]." The brief then cites to Code § 55-59.2, arguing that "[b]reach of Va. Code Section 55-59.2 as to the number of advertisements is statutorily grounds on petition to hold a foreclosure voidable, which was an issue that should have been allowed to go to trial, particularly because of the loss of equity of about $100,000." Code § 55-59.2 provides that:

> A. Advertisement of sale by a trustee or trustees in execution of a deed of trust shall be in a newspaper having a general circulation in the city or county wherein the property to be sold, or any portion thereof, lies pursuant to the following provisions:
>
>     . . . .
>
> 2. If the deed of trust does not provide for the number of publications of such newspaper advertisement, the trustee shall advertise once a week for four successive weeks; provided, however, that if the property or some portion thereof is located in a city or in a county immediately contiguous to a city, publication of

---

[9] When an appellant fails to assign error to a ruling of the circuit court, review of the ruling is waived on appeal. *Manchester Oaks Homeowners Ass'n, Inc. v. Batt*, 284 Va. 409, 422 (2012) ("[W]e do not examine the underlying merits of the alternative holding – for that is the very thing being waived by the appellant as a result of his failure to [assign error to it] on appeal." (second alteration in original) (quoting *Johnson v. Commonwealth*, 45 Va. App. 113, 117 (2005))).

Here, Egolf has not assigned error to the circuit court's dismissal of BKC Properties and Northstar from the case. Because both are no longer parties, I will not consider Egolf's claims against either, including the claim about BKC's alleged damage to the property. I also will not consider either party's pleadings.

the advertisement five different days, which may be consecutive days, shall be deemed adequate.

. . . .

E. Failure to comply with the requirements for advertisement contained in this section shall, upon petition, render a sale of the property voidable by the court.

Code § 55-59.2, which Egolf cites in her brief, clearly provides a legal right for Egolf to have the foreclosure sale voided when the seller breaches the advertising requirements in this section.

Taking the allegations in Egolf's amended complaint as true—as we must—she has pleaded sufficient facts to state violation of the requirements in Code § 55-59.2. Egolf's complaint alleges that Egolf possessed property purchased with a loan from FCB, which was secured by a deed of trust. Old North was the substitute trustee. The deed of trust provided that "on default in payment on the note by Egolf, Citizens Bank could foreclose on the home 'in accordance with' applicable law." Such applicable law "include[es Code §] 55-59.2, which provides that, where a deed of trust makes no reference to the number of advertisements for a foreclosure, a trustee or substitute trustee conducting a foreclosure under the deed of trust is required to advertise for such foreclosure (a) in four weekly newspaper advertisements if the property to be foreclosed is in a county not adjacent to any city; and (b) [for five different days][10] if the property is in a city or in a county adjacent to a city." Egolf pleaded that the subject property is in a county not adjacent to any city, and so the seller had to advertise the sale in four weekly newspaper advertisements. She pleaded that Old North foreclosed on the property and advertised the sale in the newspaper for three consecutive days before selling the property to BKC Properties. Egolf alleged that the trustee's advertisement process violated Code § 55-59.2,

_____

[10] Egolf misquoted the statute as requiring advertisement "five times daily."

- 15 -

and under this statute, the foreclosure sale may be voided. Egolf also included these facts in her brief.

The clear language of Code § 55-59.2 along with Egolf's contention that she sufficiently raised a legal cause of action to survive demurrer are enough for us to resolve this assignment of error on appeal. The language of Code § 55-59.2 very plainly states that one may request a foreclosure sale be voided when the advertising requirements of the statute are not followed. The facts pleaded by Egolf plainly fall under the very circumstances contemplated by Code § 55-59.2, and her claim related to Old North's failure to follow Code § 55-59.2 should have survived demurrer. Contrary to the concurrence's assertions, Egolf clearly pleaded facts, sufficient to survive demurrer, that her injury—lost equity in the property—stemmed from the trustee's violation of the advertising requirements.

In *Everette v. Woodward*, 162 Va. 419 (1934), the debtors' complaint requested rescission of a foreclosure sale based on the trustee's violation of advertising requirements in the deed of trust. *Id.* at 421. Our Supreme Court reversed the sustainment of the demurrer to this claim. *Id.* at 426. In so concluding, the Supreme Court held that the debtors' pleading of the following allegations were sufficient to survive demurrer:

> the trustee had failed to follow the directions contained in the deed of trust in making the sale . . . the property was not advertised as required by the deed; that the advertisement was not made for a period of ten days; that the terms as advertised were not according to the requirements of the deed and that by reason of these departures the sale was a nullity.

*Id.* at 422. The Court emphasized that "[i]t is the duty of a trustee in a deed to secure debts, in executing the trust, to conform substantially in all material particulars to the stipulations of the deed under which he acts, and the time of advertising is one of the most essential of these stipulations." *Id.* at 425.

The Court further stated that "*material departure* from the provisions of the deed will vitiate the sale" and remanded the case for the circuit court to "ascertain by evidence whether the trustee *materially departed* from the terms of the deed of trust in respect to the advertisement." *Id.* at 426-27 (emphases added). Thus, the Court did not conclude that every advertising violation would void a foreclosure sale; rather, it concluded that allegations of advertising violations should survive demurrer to determine whether such violations were material. The Court also rejected the trustee's argument that "because the [debtors] failed to . . . allege in their bill their readiness and willingness to pay the amount due, they are not entitled to relief in a court of equity." *Id.* at 426. [11]

Here, as in *Everette*, Egolf has pled, and appellees have conceded, that the trustee violated the advertising requirements in the deed of trust. Egolf further pleaded that loss of equity in the property was a "proximate result" of such violation. Thus, as in *Everette*, Egolf's pleadings are sufficient to survive demurrer—I would not hold that they are "conclusory allegations."

*Claim Related to Unconscionability of Sale Price*

Egolf's brief also sufficiently develops her argument that her claim for rescission based on the unconscionable sale price of the property should have survived demurrer. Again, Egolf's brief provides that the standard of review is de novo. The brief then states that "[t]he trial court

---

[11] *Young-Allen v. Bank of America, N.A.*, 298 Va. 462 (2020), is distinguishable. In *Young-Allen*, the Court upheld the circuit court's sustainment of a demurrer when the debtor sought rescission of a foreclosure sale due to trustee's failure to "send [the debtor] a notice of the right to cure [the debtor's default], state the amount that must be paid and where it must be sent, and the date by which that figure is good to reinstate/cure." *Id.* at 470. The Court based its holding on the debtor's failure to plead that she had the ability to cure her default. *Id.* This holding is clearly limited to cases like *Young-Allen*, when a debtor's claim centers on a trustee's breach of terms regarding the debtor's right to cure. It is not a requirement that in every case seeking rescission of a foreclosure sale, the debtor must plead that she had the ability to cure her default.

erred in sustaining the demurrers to the original complaint as to that part of the original complaint seeking rescission" and that "[t]his was error because . . . [of] the low price obtained at the foreclosure auction and therefore should have been allowed to go to trial on th[at] issue[]." Egolf cites *Parrish v. Federal National Mortgage Association*, 292 Va. 44 (2016), for the proposition in her brief that "[o]ne of the grounds to set aside a foreclosure is a . . . price at the foreclosure so low as to shock the conscience of the court." *Parrish* does stand for this proposition. 292 Va. at 52 ("[W]e have indicated that a trustee's deed could be set aside in 'cases involving fraud, collusion with the purchaser, and a foreclosure sale price of such gross inadequacy that it shocks the conscience of the court.'" (quoting *Ramos v. Wells Fargo Bank, NA*, 289 Va. 321, 324 n.* (2015))).

Egolf's complaint alleges that the sale price of $23,000 "was approximately one-fourth of the value the home should have brought (even taking lien matters into account)" and that this price "cost Egolf approximately $100,000 in equity."

It is "longstanding jurisprudence" that property foreclosed upon sold at so low a price to shock the conscience of the court is "'a ground to afford relief.'" *Crosby v. ALG Tr., LLC*, 296 Va. 561, 570 (2018) (quoting *Linney v. Normoyle*, 145 Va. 589, 595 (1926)). "A trustee under a deed of trust is a fiduciary for both debtor and creditor." *Smith v. Credico Indus. Loan Co.*, 234 Va. 514, 516 (1987). "These fiduciary duties arise under the common law and have been recognized both explicitly and implicitly for more than 200 years." *Crosby*, 296 Va. at 569 (citing *Quarles v. Lacy*, 18 Va. 251, 259-60 (1814) (recognizing that trustees under a deed of trust must "consider themselves impartial agents for both parties, and act in all sales for the interest of the debtor as well as the creditor")). "Moreover, the requirement of impartiality means that a trustee under a deed of trust must balance the conflicting positions of the creditor and debtor such that a benefit to one cannot come at a disproportionate expense of the other." *Id.*

(citing *Rohrer v. Strickland*, 116 Va. 755, 760 (1914) ("[I]f it appears that going on with the sale at the appointed time will result in a great sacrifice of the property, it is [the trustee's] positive duty to adjourn the sale." (second alteration in original)); *Rossett v. Fisher*, 52 Va. (11 Gratt.) 492, 498-99 (1854) (holding that a trustee should not "permit the urgency of the creditor to force the sale under circumstances injurious to the debtor, *at an inadequate price*" (emphasis added)); *Gay v. Hancock*, 22 Va. 72 n.+ (1822) ("A trustee in a deed of trust is considered as the agent of both parties and bound to act impartially between them; and it is his duty to use every reasonable effort to sell the estate to the best advantage.")). "So important is the requirement of impartiality that this Court has expressly recognized that a trustee's failure to remain impartial by selling the property at a price that is 'so grossly inadequate as to shock the conscience' will 'raise a presumption of fraud.'" *Id.* (quoting *Cromer v. De Jarnette*, 188 Va. 680, 686 (1949)). "So jealously does a court of equity guard the rights of the unfortunate, that it is not necessary that actual fraud be made to appear, but it will seize upon any inequitable circumstance as a ground to afford relief, where . . . property is sold for a price so inadequate 'as to shock the conscience of the chancellor.'" *Linney*, 145 Va. at 594-95.

Given the longstanding nature of this principle, Egolf's citation to *Parrish* sufficiently develops her argument that her claim for rescission based on the unconscionable sale price should have survived demurrer, and I agree that Egolf pled facts sufficient to survive demurrer. *Crosby*,[12] 296 Va. at 572 ("[W]here, as here, the complaint establishes that the foreclosure sale overwhelmingly benefited the creditor at the debtor's expense and there was a significant

---

[12] Again, it was not necessary for Egolf to cite *Crosby v. ALG Trustee, LLC*, 296 Va. 561 (2018), although such citation would have been helpful. It is a common practice of this Court to supplement the authority submitted by a party to provide additional support for its decision in a case.

- 19 -

discrepancy between the sales price and the value of the property, it is readily apparent that the

allegations are sufficient to survive a demurrer.").[13]

---

[13] The concurrence states that under *Squire v. Virginia Housing Development Authority*, 287 Va. 507 (2014), "[a]bsent evidence of fraud, a sale will not be set aside for an inadequate price." *Id.* at 519. Yet our Supreme Court's later decision of *Crosby*, although not explicitly overruling *Squire*, is at odds with the language the concurrence cites. In *Crosby*, the Supreme Court reversed the circuit court's sustainment of demurrer to Crosby's complaint, which "alleged that ALG Trustee had breached its fiduciary duty as a trustee under the deed of trust," specifically "claim[ing] that the trial court incorrectly determined that a trustee under a deed of trust does not owe a duty to sell the property in a manner that maximizes the sales price and to not sell it at a price so low that it 'shocks the conscience.'" 296 Va. at 565, 567. The Court stated that it "has expressly recognized that a trustee's failure to remain impartial by selling the property *at a price that is 'so grossly inadequate as to shock the conscience' will 'raise a presumption of fraud.'*" *Id.* at 569 (emphasis added) (quoting *Cromer*, 188 Va. at 686).
    In reversing sustainment of the demurrer, the Supreme Court concluded the following:

> With regard to *whether Crosby sufficiently alleged* that ALG Trustee breached its duty of impartiality, *we note that Crosby based his claim on the fact that the property was sold for approximately 5% of its tax assessed value and that the sales price allowed [the creditor] to recover the entire amount it was due while Crosby lost "all of the equity he had amassed in the Property."* The clear implication of Crosby's allegations is that [the trustee] favored [the creditor] at Crosby's expense *by selling the property at a grossly inadequate price*. In other words, [the trustee] failed to balance the conflicting positions, resulting in a benefit to [the creditor] at a disproportionate expense to Crosby.
>
> We recognize that a variety of factors must be considered in determining whether the sale price is so grossly inadequate as to shock the conscience of the court. *See Cromer*, 188 Va. at 686 (recognizing that "forced sale value is rarely equivalent to the fair market value as is fixed by negotiations between one who is not compelled to sell and one who is not compelled to buy.") However, where, as here, the complaint establishes that the foreclosure sale overwhelmingly benefited the creditor at the debtor's expense *and there was a significant discrepancy between the sales price and the value of the property, it is readily apparent that the allegations are sufficient to survive a demurrer.*

*Id.* at 571-72 (emphases added).
    Thus, Egolf did not need to plead any evidence of fraud to survive demurrer. The facts pled here are sufficiently similar to those in *Crosby*, and the claim should have survived demurrer. It is insignificant that the debtor in *Crosby* explicitly claimed that the trustee breached its fiduciary duty while the debtor in *Squire* did not. The Court in *Crosby* relied on implication

*FCB's and Old North's Demurrers*

FCB's and Old North's demurrers do not establish that Egolf failed to plead a legally cognizable claim. Rather, both parties admit that for some of the grounds that they state warrant dismissal, such grounds are "a matter of law."[14] But in the demurrer stage, the circuit court may not determine whether the movant prevails "as a matter of law," only whether the complaint states a cause of action. *See, e.g.*, *Malyevac*, 286 Va. at 145 ("[T]he circuit court erred when it sustained Malyevac's demurrer on the ground that 'the provision is unenforceable' *as a matter of law* and dismissed the entire complaint for that reason." (emphasis added)).

Both parties also argue that Egolf's claims should be dismissed because Egolf "has not alleged that she had the ability to cure her default." But Egolf's claims here are not based on the theory that if not for the trustee's breach, she would have been able to cure her default. Instead, her claims are based on the theory that the trustee's breaches caused her to lose equity in the property because the property was sold at such a low price—the low price potentially a result of improper advertising procedures. In cases when the plaintiff made identical claims to Egolf's,

_____

in reaching its conclusion. As discussed above, it concluded that "[t]he clear implication of Crosby's allegations [that the property was sold at a fraction of its value] is that [the trustee] favored [the creditor] at Crosby's expense by selling the property at a grossly inadequate price. *Id.* at 572. Further, the Court recognized that Crosby's claim was based on a duty that is itself implied. *See id.* (discussing the "Court's explicit recognition that the duty of impartiality is a common law duty that exists as an implied term of the deed of trust").

[14] In their demurrers, Old North and FCB asserted that: (1) "[a]s a matter of law, the damages claimed by . . . Egolf in the [a]mended [c]omplaint for loss of equity are speculative"; and (2) "[a]s a matter of law, . . . Egolf cannot recover damages for loss of equity if she is granted the rescission that she seeks." Even if such matters of law were properly considered at the demurrer stage, Old North and FCB's demurrers should still not be sustained based on these reasons. A complaint may simultaneously request injunctive and monetary relief. *See Worsham v. Worsham*, 74 Va. App. 151, 176 (2022) ("[A] claim for injunctive relief or specific performance necessarily implies a request for monetary relief as a lesser-included remedy, so much so that a plaintiff need not explicitly pray for money damages as a fallback position."). Thus, requesting both forms of relief is not grounds for dismissal of the complaint. And the alleged speculative nature of Egolf's damages would not be grounds to dismiss the complaint as she has alternatively requested injunctive relief.

our Supreme Court has not required the plaintiff to allege that she had the ability to cure her default for the claims to survive demurrer. *See Everette*, 162 Va. at 422, 426 (holding that it was error to sustain demurrer when the plaintiff pleaded that the trustee did not follow the advertising requirements in the deed of trust); *Crosby*, 296 Va. at 572 ("[W]here, as here, the complaint establishes that the foreclosure sale overwhelmingly benefited the creditor at the debtor's expense and there was a significant discrepancy between the sales price and the value of the property, it is readily apparent that the allegations are sufficient to survive a demurrer.").

The rest of Old North's and FCB's arguments rely on untrue assertions of law and fact. They argue that "any alleged breach by Old North did not cause any alleged harm to Ms. Egolf, which harm is solely attributable to Ms. Egolf's own breach." They also argue that "Egolf gave up her right to possession upon default[; t]herefore, she is not entitled to rescission or damages for injury to the property." Yet, again, as discussed above, in cases when the plaintiff made identical claims to Egolf's, such plaintiffs had legally cognizable claims even when the plaintiff defaulted and gave up possession of the property. *See Everette*, 162 Va. at 422 (concluding that claim should have survived demurrer even when debtor defaulted and deed of trust provided that trustee would sell property upon default); *Crosby*, 296 Va. at 564 (concluding that claim should have survived demurrer even when debtor defaulted). Old North and FCB also argue that Egolf's claims must be dismissed because "Egolf fails to allege any specific damages in her [a]mended [c]omplaint." This statement is untrue—in her amended complaint, Egolf seeks damages for her lost equity in the property, among other items of damages, and seeks a total of $150,000 in damages from FCB. Old North and FCB also contend that the claims should be dismissed because "Egolf is not entitled to reinstate her loan, and, if the Court grants rescission, the only possible remedy would be another foreclosure." But in Egolf's complaint, she does not request reinstatement of her loan. Lastly, FCB and Old North's demurrers assert that the claims

- 22 -

should be dismissed because "[t]he allegations in the [a]mended [c]omplaint are contrary to, and negated by, the exhibits attached to the original . . . [c]omplaint." Yet "[i]n considering a demurrer, the trial court [i]s limited to review of the amended complaint and any attachments *to that complaint*." *TC MidAtlantic Dev., Inc. v. Commonwealth, Dep't of Gen. Servs.*, 280 Va. 204, 212 (2010) (emphasis added).

All of FBC's and Old North's arguments in support of their demurrers lack merit, and the circuit court erred in sustaining the demurrers. Egolf's complaint stated the legally cognizable claims outlined above and these claims should have survived demurrer.

Conclusion

Although I do not condone noncompliance with the procedural rules of this Court, reading these rules too strictly such that we avoid the merits of a case comes at a high cost to litigants. Our Supreme Court has specifically counseled this Court to determine whether noncompliance with Rule 5A:20(e) is insignificant enough to allow us to proceed to the merits of the case. Because the procedural posture for review of a demurrer only requires that *the pleadings* state a legally cognizable claim—not that the plaintiff will prevail as a matter of law— noncompliance with the rule here is insignificant. Additionally, many of the claims are statutory and are grounded in caselaw that has existed for over 200 years. Thus, I would reverse the sustainment of the demurrers and remand the case to the circuit court for a trial on the merits.